UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ROMELL KIDD** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 10-CV-00157 |
| | : | |
| **ABBOTT LABORATORIES** | : | Judge: Frost |
| c/o Ct. Corporation System | : | |
| Statutory Agent | : | Magistrate Judge: King |
| 1300 East Ninth Street | : | |
| Cleveland, Ohio 44114 | : | <u>Second Amended</u> |
| | : | <u>Complaint</u> |
| and | : | |
| | : | |
| **DANIEL GILMORE,** | : | |
| | : | |
| Defendants. | : | |

**<u>PLAINTIFF ROMELL KIDD'S SECOND AMENDED COMPLAINT</u>**

For his Complaint against Defendant Abbott Laboratories ("Abbott"), Romell Kidd states as follows:

**<u>NATURE OF CLAIMS</u>**

Now Comes Plaintiff Romell Kidd, by and through the undersigned counsel, and for his complaint states as follows:

1. This action is brought because of the unlawful and discriminatory conduct and employment practices of Defendant Abbott Laboratories (hereinafter "Abbott"). The action arises out of the illegal and discriminatory wrongful termination of Plaintiff Kidd based on his race and age.

2. Plaintiff Kidd, a professional pharmaceutical salesperson, alleges, inter alia, that he was the only African-American in his sales district under Daniel Gilmore and

is one of the most experienced salespersons in his sales district, who consistently achieved sales goals during his employment at Abbott. Despite outstanding job performance, Plaintiff Kidd was targeted for an unfair job evaluation and terminated because of his race and age.

## JURISDICTION AND VENUE

3. This action is instituted and authorized by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-et seq., §102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Ohio Revised Code § 4112.14 (Age), § 4112.02 and § 4112.99 (Race).

4. Plaintiff filed timely administrative complaints with the EEOC and Plaintiff received the Right to Sue letters from the EEOC on March 23rd 2009 and on August 19, 2009.

5. Jurisdiction of this Court to hear and determine the claims is based on 28 U.S.C. § 1331 and § 1343. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this Court as all the acts complained of herein occurred in the State of Ohio, within the jurisdiction of this Court.

## PARTIES

### Plaintiff

7. Plaintiff Romell Kidd is a resident of Franklin County, Ohio and is a former Abbott Specialty Pharmaceutical Sales Representative in Abbott's Cincinnati-Columbus Rheumatology sales district ("CCR sales district") with over 13 years of professional experience.

2

8. Plaintiff Kidd is an African-American and over 40 years of age. Accordingly, Plaintiff Kidd is deemed a member of the protected class under federal and state anti-discrimination laws.

9. 9. Defendant Daniel Gilmore is a former manager of Plaintiff and an employee of Abbott and is only being sued as to the civil conspiracy claim.

**Defendant**

10. At all times material herein, Defendant Abbott is a Fortune 500 pharmaceutical sales company that does business in Franklin County, Ohio and has gross sales of $25.9 Billion.

11. At all times material herein, Defendant Abbott was and is an employer under Federal and State Discrimination laws.

**FACTS**

12. Plaintiff Kidd, an African-American and over 40 years of age, was an exemplary Abbott salesperson who consistently achieved and frequently exceeded sales goals.

13. Throughout his employment at Abbott, Plaintiff Kidd has never been placed on PIP and has never been placed on a Performance Improvement Plan ("PIP") in his long career as a pharmaceutical salesperson.

14. Defendant Abbott Laboratories intentionally placed Plaintiff Kidd on a Performance Improvement Plan ("PIP") for the purpose of disgorging Plaintiff Kidd of his earned bonus and profit sharing monies.

15. Defendant Abbott Laboratories knew that Placing Plaintiff on a PIP would result in his termination and ineligibility under Abbott policies to obtain his bonuses and profit sharing monies.

16. Despite his exceptional performance, Plaintiff Kidd was terminated on October 28, 2008 after being placed on the PIP on September 3, 2008.

17. Plaintiff Kidd was placed on a PIP by his supervisor Daniel Gilmore, a Caucasian, who was his supervisor and sales manager of Abbott CCR sales district. Mr. Gilmore, an Abbott employee, was acting in the scope of his employment at all relevant times material herein.

18. Plaintiff Kidd was the only African-American sales person in the Abbott CCR sales district, which was supervised by Mr. Gilmore, the CCR sales district manager.

19. Plaintiff Kidd was purportedly placed on the PIP due to job performance issues. Defendant Abbot knew that the job performance issues were minor and did not justify placement on a PIP. No similarly situated Caucasian employees in the sales district were placed in the PIP during the relevant time period, or if placed on a PIP, the areas of performance improvement were significant and not minor, as in the case of Plaintiff Kidd.

20. On or about the time Plaintiff Kidd was placed on the PIP, he was meeting his sales goals for the sale of an Abbott product called Humira, a rheumatoid arthritis medicine.

21. The PIP identified several areas that Plaintiff Kidd needed to improve within 60 days, yet Plaintiff Kidd was not given 60 days to make the alleged performance

4

improvements and Abbott failed to await sales data reported in December 2008 to determine whether Plaintiff Kidd's performance had improved.

22. Despite indentifying alleged areas in the PIP, Mr. Gilmore failed to provide ample training and guidance to Plaintiff Kidd. Plaintiff Kidd received no training and guidance during the PIP time period because his placement on the PIP was a pretext for unlawful discrimination.

23. Plaintiff Kidd, despite 6 years of successful sales performance at Abbott, was summarily terminated on October 28, 2008, just 5 days before the completion of the PIP.

24. Despite his years of meritorious service to Abbott, Mr. Gilmore ordered Plaintiff Kidd to meet him at an Abbott office located in Westerville, Ohio and demanded the surrender of Plaintiff Kidd's company vehicle.

25. Unaware that he was to be terminated; Plaintiff Kidd was not prepared to surrender his vehicle.

26. After his termination, Plaintiff Kidd requested his Trimester 2, 2008 earned bonus, profit sharing compensation, and severance pay.

27. Abbott's human resources department informed Plaintiff Kidd that he would receive the earned bonus in November 2008. Plaintiff Kidd has not received the earned bonus, nor has he received profit sharing compensation.

28. Plaintiff Kidd's earned bonus is based on his sales performance up to the time of his termination and is part of his compensation.

29. Plaintiff Kidd's profit sharing compensation is based on his contribution to Abbott's pharmaceutical sales profits and is paid to Abbott employees and would have been received by him but for Defendant's unlawfully discriminating motive to deprive him of bonus and profit sharing monies.

30. Despite having earned the bonus and being eligible for profit sharing compensation, Abbott has refused to pay compensation and profit sharing compensation earned prior to his termination. Abbott has also refused to reimburse Plaintiff Kidd for pre-termination expenses incurred by him in the course of his employment.

31. Defendant Abbott has engaged in pre-textual conduct by, among other things, terminating Plaintiff Kidd for job performance issues when the real reason was his race and age.

32. As a result of Defendant Abbott's conduct and actions, Plaintiff Kidd has been subjected to unlawful discrimination the full extent of which will become known throughout the course of discovery, and Plaintiff Kidd herby reserves the right to pursue such claims and facts giving rise to such termination as they become known.

33. Plaintiff Kidd has suffered emotional distress, humiliation, embarrassment, loss of respect, and damage to his professional career and reputation.

### First Claim for Relief
### Race and Age Discrimination in Violation of Ohio Revised Code § 4112.02, 4112.99, and 4112.14

34. Plaintiff Kidd hereby realleges and incorporates by references as if fully set forth herein, the allegations of paragraphs 1 through 33 above.

35. Defendant Abbott discriminated against Plaintiff on the basis of his race and age by placing him on a PIP and terminating him.

36. As a direct and proximate result of Defendant Abbott's discriminatory conduct, as described herein, Plaintiff Kidd has suffered loss of income and benefits and impairment of earning capacity, emotional distress, anxiety, anguish, humiliation, and other incidental and consequential damages and expenses, all to Plaintiff's damages in an amount according proof.

### Second Claim for Relief
### Race Discrimination in Violation of 42 U.S.C. § 2000e-et seq., §102 of the Civil Rights Act of 1991 and 42 U.S.C §1981

37. Plaintiff hereby re-alleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 36 above.

38. Defendants discriminated against Plaintiff on the basis of his race, by targeting and unfairly placing on PIP, terminating, and disgorging him of his bonus and profit sharing income.

39. Similarly situated non-minorities were not placed on a PIP and terminated in his sales district.

40. Defendant Abbott has engaged in a pattern and practice of discrimination company-wide by disproportionally placing African-American's on PIPs.

41. The performance issues identified by Abbott were a pretext for unlawful discrimination.

42. Defendant Abbott entered into a contract with Plaintiff and breached it by engaging in unlawful discrimination based on his race.

43. As a direct and proximate result of Defendant's conduct Plaintiff has suffered damages.

### Third Claim for Relief
### Breach of Contract

44. Plaintiff Kidd hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 43 above.

45. Plaintiff Kidd's position was held under both express and implied promises of job security and in accordance with Defendant Abbott's policies, employee manual, and communications from Defendant Abbott's employees, managers, staff, and agents that Plaintiff would not be placed on a PIP and terminated in violation of Ohio Public Policy.

46. In particular, Defendant Abbott represented that the PIP would be used as a performance improvement tool.

47. Defendant Abbott promised that bonuses and profit sharing income would not be disgorged by misuse and abuse of PIP and unlawful termination.

48. Defendant Abbott breached the contract by misuse of the PIP resulting in termination and disgorgement of bonuses and profit sharing.

49. Plaintiff Kidd, therefore, earned compensation in the form of bonus and profit sharing compensation and has not been paid for his services and work.

50. Defendant Abbott's employment practices constitute a willful breach of contract inasmuch as Plaintiff Kidd should not have been terminated and denied earned compensation.

51. Defendant Abbott's actions in removing Plaintiff Kidd from his position, its failure to reinstate him, and failure to pay earned compensation constitutes a willful breach of his contract (express and/or implied).

52. As a result of Defendant Abbott's actions, Plaintiff Kidd has suffered irreparable injuries, including but not limited to, loss of pay, loss of benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries, all for which he should be compensated.

### Fourth Claim for Relief
### Promissory Estoppel

53. Plaintiff Kidd hereby realleges and incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 52 above.

54. Defendant Abbott's policies and practices, represented to Plaintiff Kidd, caused Plaintiff Kidd to conclude, on a good faith basis, that satisfactory sales performance and continued improvement would permit him to continue his employment at Abbott.

55. Defendant Abbott represented through its human resource department and public and employee based communications that the PIP is a performance improvement tool, that is utilized to address performance issues, and that employees will be given an opportunity to correct or improve sales performance.

56. Defendant Abbott caused Plaintiff to rely on these representations.

57. Defendant Abbott misused the PIP to the detriment of Plaintiff.

58. Defendant Abbott did not use the PIP as a performance tool, and did not intend to provide Plaintiff with an opportunity to improve, but used it to terminated Plaintiff Kidd and disgorge his bonuses and profit-sharing income.

59. Plaintiff Kidd did, in fact, improve his sales performance.

60. Plaintiff Kidd relied on Defendant Abbott's policies and practices, as communicated and demonstrated to Abbott employees.

61. Furthermore, in reliance upon the representations by Defendant Abbott's reassurance that Plaintiff Kidd would receive his bonus <u>immediately after</u> his termination, Plaintiff Kidd withdrew significant funds from his 401K.

62. Abbot, however, never paid earned bonus and as a consequence, Plaintiff Kidd incurred: 1) tax penalties and fines because he was not able to pay the 401K loan within 90 days; and 2) interest payments on the 401K loan. In addition, he has suffered the loss of investment appreciation in the value that he would have received on the funds if they had not been withdrawn.

63. By the aforementioned acts and/or omissions, policies and practices, Plaintiff Kidd has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings, reliance damages, costs of suit, and other pecuniary losses in an amount not presently ascertained, but to be proven at trial.

64. As a further direct and legal result of the acts and conduct of Defendant Abbott, as aforesaid, Plaintiff Kidd has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, and anxiety.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Kidd respectfully requests that this Court:

A. Award back pay, front pay, and any benefits Plaintiff Kidd would have received had Defendant Abbott not discriminated against him on the basis of his race:

10

B.Award Plaintiff Kidd liquidated and consequential damages for economic loss he has suffered as a proximate result of Defendant Abbott's conduct;

C.Award Plaintiff Kidd compensation for past and future pecuniary losses resulting from Defendant Abbott's unlawful employment practices, including compensatory and punitive damages for humiliation, damage to reputation, mental and emotional distress, and pain and suffering that he has experienced and endured as a result of Defendant Abbott's conduct;

D.Award Plaintiff Kidd punitive damages for malicious and reckless conduct by Defendant Abbott.

E.Award Plaintiff Kidd pre and post judgment on all sums and awards;

F.Award Plaintiff Kidd the cost incurred in this action and reasonable attorneys' fees; and

G.Grant such other legal and equitable relief as is necessary and proper.

## JURY DEMAND

Plaintiff Kidd requests a jury to hear and decide all issues of fact.

Respectfully submitted,

s/ William W. Patmon III
William W. Patmon, III (0062204)
Patmon LLC
Attorneys and Counselors at Law
4100 Regent Street, Suite U
Columbus, Ohio 43219
(614) 470-9860 (Phone)
(614) 470-9930 (Facsimile)
wpatmon@patmonlaw.com
*Attorneys for Plaintiff Kidd*

11

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing Plaintiff's *Second Amended Complaint* was filed electronically with the court on this 15th day of September 2010. Defendants can retrieve a copy of this document via Court's electronic filing system.

                                                      S/William W. Patmon III  
                                                     William W. Patmon III (0062204)