**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ROMELL KIDD,**

        **Plaintiff,**

                                **Case No. 2:10-cv-157**

     **v.**                     **JUDGE GREGORY L. FROST**

                                **Magistrate Judge Norah McCann King**

**ABBOTT LABORATORIES,**

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Abbott Laboratories'

Motion for Summary Judgment and Memorandum in Support of its Motion for Summary

Judgment (ECF Nos. 48, 49), Plaintiff Romell Kidd's Memorandum in Opposition to Abbott

Laboratories' Motion for Summary Judgment (ECF No. 50), and Defendant Abbott

Laboratories' Reply Memorandum in Support of its Motion for Summary Judgment (ECF No.

51).  For the reasons that follow, the Court **GRANTS** Defendant's motion.

### I.  Background

On October 12, 2002, Plaintiff Romell Kidd ("Plaintiff") began his employment as a

sales representative at Abbott Laboratories ("Abbott" or "Defendant").  Plaintiff was responsible

for selling rheumatology drugs that are manufactured by Abbott.  Plaintiff's job title was

"General Representative," which Abbott defines as a sales representative who has a set sales

territory.  Plaintiff's territory was Columbus, Ohio.

Each year, Abbott sales representatives receive annual performance appraisals that are

completed by their district manager.  Employees' performances in particular categories and

1

overall are assigned one of four ratings:  Exceeds Expectations, Achieved Expectations, Partially Achieved Expectations, and Not Achieved Expectations.  The parties present evidence related only to the years 2004, 2005, and 2007.

In 2004, Plaintiff's district manager Vinnie Khera rated Plaintiff as deficient in the core job responsibilities of "Selling to Customers," "Territory Management," and "Strategic Account Management," and rated Plaintiff's overall performance as Partially Achieved.[1]  (ECF No. 49-3 at 141-147, Pl. Dep. Ex. 12.)  Khera's "summary of overall performance" comments indicated that "the first 2 trimesters have been challenging" for Plaintiff but that the third trimester was "showing promise" that Plaintiff will "achieve his territory sales goals in 2005."  *Id.* at 146.  In 2004 Plaintiff received three "beat your best" awards and a "SPIFF" award, thereby securing a raise and a bonus.  (ECF No. 50 at 3 citing 50-1, Pl. Aff.).  Khera commented on Plaintiff's sales stating: "While [Plaintiff]'s [product] share performance improved in the latter part of 2004, his overall share trends continue to be lower than district averages."  (ECF No. 49-3 at 146, Pl. Dep. Ex. 12.)

In 2005, Khera rated Plaintiff as deficient in the core job responsibilities of "Selling to Customers," "Territory Management," and "Strategic Account Management," and rated Plaintiff's overall performance as Partially Achieved.[2]  *Id.* at 149 -156.  Khera's "summary of overall performance" comments indicated that "2005 was an inconsistent year for [Plaintiff]'s

---

[1]In Plaintiff's memorandum in opposition, Plaintiff refers to this evaluation as the evaluation for 2005.  Plaintiff, however, relies upon the 2004 evaluation.  (*See* 50 at 3 citing to ECF No. 49-3 at 142-43; Pageid 414-15).

[2]In Plaintiff's memorandum in opposition, Plaintiff refers to this evaluation as the evaluation for 2006.  Plaintiff, however, relies upon the 2005 evaluation.  (*See* 50 at 3 citing to ECF No. 49-3 at 153-55; Pageid 425-27).

sales performance and demonstration of competencies.  [Plaintiff] did not improve on areas that were assessed as [Partially Achieved] from last year's review."  *Id.* at 155.  Khera further stated that Plaintiff should:  "Strive to improve in all areas, giving particular attention to [selling effectively, judgment and initiative, and strategic account management], and become more consistent."  *Id.*  Khera concluded the summary stating that Plaintiff's "territory numbers have begun to show an upward trend" and that Plaintiff should "[b]uild on this momentum, develop in key areas, and deliver a strong overall performance in 2006 (Core Job Responsibility, Goals, and Competencies)."  *Id.*  Plaintiff was given a raise and a bonus for 2005.  (ECF No. 50 at 3 citing 50-1. Pl. Aff.).

In 2007, Plaintiff was supervised by Dan Gillmore who rated Plaintiff's core responsibilities of "Selling Technique" and "Business Management" as Not Achieved and "Office Account Management" as Partially Achieved.  (ECF No. 49-3 at 158-64, Pl. Dep. Ex. 18.)  Gillmore commented in the summary:

> Strengths demonstrated in 2007:
> [Plaintiff] has built and maintained strong relationships with his customers.  He also has a solid understanding of the geography and the institutions.  He networks well within the territory.
>
> Development areas for 2008:
> [Plaintiff] needs to capitalize on his tenure within the biological market and Abbott as well as his relationships with his offices.  He should be more proactive in increasing his product knowledge, use of selling materials, and reprints in order to move past relationship building to selling.  Planning and organizing his overall book of business, calls, and scheduling will help him to formulate (*sic*) plans, strategies and objectives that will give him a more focused approach when managing his territory.  [Plaintiff] needs to utilize the advice of his district manager in order to accomplish these goals.

*Id.* at 164.  Gillmore rated Plaintiff's overall performance as Partially Achieved.

On October 10, 2007, Gillmore spoke to Plaintiff about his performance and the concerns

3

Gillmore had about Plaintiff's failure to improve his performance in the six months since his

2007 performance review.  On January 2, 2008, Gillmore placed Plaintiff on a "Coaching and

Counseling Plan," the first paragraph of which read:

> The purpose of this document is to address performance gaps and clarify expectations.  As discussed on October 10, 2007, your current level of performance is unacceptable and requires significant improvement.  The goal of this coaching and counseling document is to help you improve your performance.

*Id.* at 166.  The Coaching and Counseling Plan identified several areas in which Plaintiff needed

to improve his performance, including among others, improvements in Plaintiff's sales call

execution, business management, and office account management.  The Plan was scheduled to

last until April 2008 but was later extended until September 2008.  The Plan ended with a

paragraph setting out the resources available to Plaintiff in the event he needed assistance

understanding the Plan and/or performing his job, and further indicated:

> Immediate, consistent and sustained performance improvement is necessary or you may be subject to further disciplinary action.

*Id.* at 169.

During the time that Plaintiff was subject to this Coaching and Counseling Plan, Gillmore

traveled with Plaintiff two days in March, one day in April, two days in July, and two days in

August to observe his performance.  (ECF No. 49-5, Gillmore Aff. ¶ 6).  After observing his

performance, Gillmore placed Plaintiff on a Performance Improvement Plan ("PIP"), which took

effect on September 3, 2008.  *Id.* at ¶ 3.  The PIP indicated to Plaintiff:

> Due to your failure to demonstrate immediate and sustained improvement, you are being placed on a Performance Improvement Plan for up to 60 days effective immediately.

(ECF No. 49-3 at 171, Pl. Dep. Ex. 33.)  The PIP required that Plaintiff "immediately improve"

4

in the areas of "Sales Call Execution, Clinical and Market Knowledge Development and Business Management and Office Account Management." *Id.* at 171-75. The PIP also called for Plaintiff to meet certain administrative requirements to help his superiors assess his performance. *Id.* Plaintiff failed to fully comply with the administrative requirements. For example Plaintiff was required to provide documentation of his follow-up action plans to his supervisor every Friday; however, Plaintiff only met that requirement three of six times. (ECF No. 49-4 at 67-68, Gillmore Dep.) The PIP also required Plaintiff to create a plan to assist him in meeting with "difficult to see" doctors, which he also failed to do. (ECF No. 49-3 at 171, Pl. Dep. Ex. 33.)

During this time period, Abbott's Employee Relations Manager Sue Niver-Percy directed Gillmore's manager, Regional Manager William Axelson, to observe Plaintiff on his field calls. (ECF No. 49-4 at 14, Gillmore Dep. at 46.) A separate district manager, Larry Staples, observed Plaintiff as well. Axelson and Staples determined that that Plaintiff's sales call performance was below expectations. (ECF No. 49-6, Axelsen Aff. ¶ 9; ECF No. 49-7, Staples Aff. ¶ 7.)

On October 28, 2008, Plaintiff was terminated. The decision to terminate Plaintiff was recommended by Gillmore and approved by Axelson and Niver-Percy. Abbott contends that it terminated Plaintiff for continued poor work performance despite several warnings and opportunities to improve. Plaintiff, however, argues that he was terminated because he is an African American and because he was 48 years old.

On January 22, 2010, Plaintiff filed this action in the Franklin County, Ohio, Court of Common Pleas. On February 19, 2010, Defendant removed the action to this Court based upon diversity of citizenship. (ECF. No. 2.) On July 1, 2010, the Court granted Plaintiffs' request to file an amended complaint (ECF No. 22), and on November 1, 2010, the Court granted

Plaintiffs' request to file a second amended complaint (ECF No. 41).  Defendant has moved for summary judgment on all Plaintiffs' claims for relief.  (ECF No. 48.)  That motion is ripe for review.

## II.  Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248).  *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a

dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts" ).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.  Discussion

In the second amended complaint, Plaintiff alleges race and age discrimination in violation of Ohio's civil rights statute, Ohio Rev. Code §§ 4112.02, 4112.99, 4112.14, race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), breach of contract, and promissory estoppel.

### A.  Discrimination

Plaintiff alleges age and race discrimination in violation of Ohio law and race discrimination in violation of federal law.  Ohio courts apply Title VII case law when analyzing cases filed under Ohio Revised Code § 4112.  *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (Ohio 1981) *Kocak v. Cmty. Health Partners, Inc.*, 400 F.3d 466, 471-72 (6th Cir. 2005).  Further, claims of racial discrimination filed under § 1981 are also analyzed under the same standards as Title VII. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) (noting that the elements of *prima facie* case and burdens of proof are the same for Title VII & § 1981).

A plaintiff may prove that he was subject to discriminatory treatment based on race or age using either direct or circumstantial evidence.  Where, as here, there is no direct evidence of

discrimination, a plaintiff's circumstantial evidence is analyzed under the burden shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  Under the *McDonnell Douglas* burden shifting framework, "[t]he burden is first on the plaintiff to demonstrate a *prima facie* case of [] discrimination; it then shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext-*i.e.* that the employer's explanation was fabricated to conceal an illegal motive."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-04).

### 1.  *Prima Facie* Case

To establish a *prima facie* case of race or age discrimination based on wrongful termination, a plaintiff must demonstrate that (1) he is a member of a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified, and (4) he was replaced by someone outside of the protected class or was treated less favorably than similarly situated, non-protected employees.  *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (citing *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).

There is no dispute that Plaintiff, a 48 year old African American, is a member of two protected classes: age[3] and race.  There is also no dispute that Plaintiff's termination constitutes a materially adverse employment action.  The parties' arguments are related only to the third and

---

[3]Under Ohio law, an individual is a member of the protected age class if he was at least forty years old at the time of the alleged discrimination.  Ohio Rev. Code § 4112.14.

fourth prongs of the *prima facie* case.

### a.  Fourth Prong - Replacement or Disparate Treatment

To establish the fourth prong of his *prima facie* case, Plaintiff must show that he was replaced by someone outside of his protected classes or was treated less favorably than similarly situated, non-protected employees.  Abbott argues that Plaintiff can show neither.  This Court agrees.

### i.  Replacement

After Plaintiff was terminated, no one was hired to replace him, no one was transferred to his position, and no one was reassigned to his position.  Instead, Plaintiff's duties were distributed among the two existing Strike Representatives in Plaintiff's territory.  District Manager Gillmore testified:

Q. Why didn't you replace Mr. Kidd with another sales rep?

A. Because in August of 2007 [a year and two months prior to Plaintiff's termination] I had made the decision to have another representative start calling on that area.  And after she had done that, there were some improvements that were seen.  So it wasn't initially a decision to totally not fill the position, it's let's wait and see, let's see if we need to.  [Strike Representative] Adam Moyer was currently there.  [Strike Representative] Suzanne [Perrazo] was currently there.  Let them call on them.

Q. So your view is you could do the same work with fewer people?
. . . .
A. It wasn't a view.  It was more or less a trial and error.  Did we need to fill that position or did we not.  I didn't know either way.

Q. Okay. You said you discovered that after you terminated Mr. Kidd or you discovered -- you said you discovered that before you terminated Mr. Kidd.

A. I added a representative to assist with the Columbus area just to ensure that we were hitting those physicians with more frequency --

Q. Right.

9

A. -- to drive business.  So that was in August of 2007.  After I let Romell go [in October 2008], of course, the question comes up, do we fill the position.  I was directed by Abbott to simply hold off on filling the position, let's wait and see and they would get back to me.  Well, six months out, they said there was no need to fill the position.

(ECF No. 49-4 at 69, Gillmore Dep. pp. 267:17-269:1).

Based on this uncontroverted testimony, as a matter of law, Plaintiff was not replaced.

A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."

*Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (quoting *Barnes v. GenCORP, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).  "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."  *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992).

Plaintiff, however, argues that:

Adam Moyer (Caucasian)[4] or Suzanne Perazzo (Caucasian)[5] effectively replaced Plaintiff Kidd.  Abbott's sales territories are organized around having General and Strike Representatives.  A territory may have multiple Strike Representatives, but must have a General Sales Representative.  Abbott claims it kept Mr. Moyer and Ms. Perrazzo in their strike representative jobs and simply assigned general representative duties to them.  In essence, both must act as strike representatives and simultaneously serve as general representative to all of the physicians in Plaintiff Kidd's sales territory.  This is simply untrue and is not credible.  As the performance evaluations demonstrate, as well as the PIP itself, the General Sales Representative job is very demanding and requires constant, focused interaction with each physician-customer in the territory.  It is practically impossible for Mr. Moyer and Ms. Perazzo to fulfill job duties for each of these positions in Plaintiff Kidd's

_____

[4]The Court notes that Moyer is 45 years old, and therefore, not outside of Ohio's protected age category.

[5]The Court notes that Perazzo is 58 years old, and therefore, not outside of Ohio's protected age category.

> territory and provide strike sales job services to other General Sales Representatives
> in other territories in the Cincinnati Region.

(ECF No 50 at 5-6.)

Plaintiff's subjective beliefs about the impossibility of his job duties being spread among Moyer and Perazzo is wholly insufficient to raise a genuine issue of material fact as to whether Plaintiff was replaced.  *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992) ("Even if the Court were to consider the Affidavit, the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").  Further, while Plaintiff argues that it is untrue and incredible that his duties were reassigned, the uncontroverted evidence before the Court shows that Abbot did exactly that–reassigned his duties to individuals already performing similar duties.  Plaintiff does not submit any evidence showing that another individual was hired or reassigned to perform his duties or that Moyer and/or Perazzo were not assigned to perform Plaintiff's duties in addition to their own duties.

Alternatively, Plaintiff argues that *Tinker v. Sears Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir. 1997) holds that when an employer's purported assignment of duties is to an employee who has a lesser position, that employee is deemed an effective replacement.  (ECF No. 50 at 5, 7.)  Plaintiff contends that because the Strike Representative position held by Moyer and Perazzo is a lesser position than is the General Representative position, Abbot's assignment of his General Representative duties to Moyer and Perazzo is properly deemed an effective replacement.  Even assuming that the Strike Representative position is a "lesser position" than the General Representative position, Defendant correctly points out that *Tinker* does not support Plaintiff's argument.

11

That is, the *Tinker* court does not hold that the assignment of duties to one who holds a lesser position is an effective replacement.  Instead, the *Tinker* court concluded that the employer's promotion of an employee from part-time to full-time in order for that employee to perform the duties of the terminated employee so "fundamentally change[d] the nature of [the part-time employee's] employment," that it was analogous to hiring a new employee, as opposed to just an assumption of a terminated employee's duties."  *Tinker*, 127 F.3d at 519 ("[The part-time employee] did not assume Tinker's duties in addition to his own part-time duties.").

In the case *sub judice*, there is no evidence whatsoever to support a finding that the nature of Moyer's or Perrazo's duties was so fundamentally changed that it was analogous to hiring a new employee.  It is undisputed that Plaintiff remained a General Representative until his termination, that no employee has been hired or transferred to Plaintiff's position, and that both Moyer and Perazzo retained their existing titles and duties as Strike Representatives when they took on Plaintiff's duties after his termination.  Therefore, Plaintiff was not replaced by either Moyer or Perazzo.  *See also Graessle v. Nationwide Credit, Inc.*, No. 2:03-CV-00758, 2007 U.S. Dist. LEXIS 37256, 2007 WL 1514003, *7 (S.D. Ohio May 22, 2007) ("after Plaintiff's discharge, Ms. Boyer and Mr. Danahy, while maintaining their prior job titles and responsibilities, assumed Plaintiff's duties. . . .  Thus, Ms. Boyer's and Mr. Danahy's assumption of these additional duties did not fundamentally change the nature of their employment with NCI.").

### ii.  Disparate treatment

The fourth prong of Plaintiff's *prima facie* case can also be met by showing that Plaintiff was treated less favorably than a similarly situated individual outside of his protected classes.

12

For an individual to be similarly situated to a plaintiff, a plaintiff must demonstrate that he and his proposed comparator are "similar in 'all of the relevant aspects.' "  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).  Generally, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Id.* ("Courts should not assume, however, that the specific factors discussed in *Mitchell* [*v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)],are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee.").  Here, Abbott argues that Plaintiff cannot show that any of his peers are similarly situated because Plaintiff's performance was consistently rated below his peers and none of his peers shared Plaintiff's well-documented and persistent performance problems.[6] Plaintiff does not respond to this argument.

The Court finds Abbott's argument well taken.  The evidence before the Court shows that Plaintiff's peers were not similar in all relevant respects.  The 2004 and 2005 overall performance ratings of Joel M. Hafner (Caucasian, age 36) was Exceeded Expectations and in 2006 and 2007 was Achieved Expectations.  (ECF No. 49-2, Niver-Percy Aff. ¶ 15.)  Hafner was

---

[6]Subsequent to his termination, however, two employees in Plaintiff's region, Suzanne Spayd and Joseph Haffner, were placed on a PIP and a Coaching and Counseling Plan, respectively, by District Managers other than Gillmore.  Both employees were white and both were eventually terminated.  (ECF No. 49-2, Niver-Percy Aff. ¶¶ 25-26).

never placed on a Coaching and Counseling Plan or a PIP. *Id.* ¶ 16. The overall performance rating in 2004, 2005, and 2007 of Perazzo (Caucasian, age 58) was Achieved Expectations and in 2006 was Exceeded Expectations. *Id.* ¶ 17. Perazzo was never placed on a Coaching and Counseling Plan or a PIP. *Id.* ¶ 18. The overall performance rating in 2004, 2005, 2006, and 2007 of Moyer (Caucasian, age 45) was Achieved Expectations. *Id.* ¶ 19. Moyer was never placed on a Coaching and Counseling Plan or a PIP. *Id.* ¶ 20. The overall performance rating in 2004 of Laura Watier (Hispanic, age 51) was Exceeded Expectations and her overall performance rating for 2005, 2006, and 2007 was Achieved Expectations. *Id.* ¶ 21. Waiters was never placed on a Coaching and Counseling Plan or a PIP. *Id.* ¶ 22.

Consequently, Plaintiff has failed to establish the fourth prong of his *prima facie* case of age and/or race discrimination.

### b. Qualified

Abbot argues that, even if Plaintiff had been able to establish the fourth prong of his *prima facie* case, Abbott would still be entitled to summary judgment because Plaintiff has failed to establish the third prong. That is, Plaintiff has not shown that he was qualified for his position. This Court agrees.

In order to show that he was qualified at the time of his termination, a "plaintiff must show that []he was performing at a level which met defendant's legitimate expectations." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999) (citations omitted). The evidence before the Court unquestionably shows that Plaintiff had not been meeting Abbott's expectations prior to his termination. In 2004, 2005 and 2007, Plaintiff's overall rating was the second lowest rating available, (*i.e.*, Partially Achieved), and the lowest

rating received by any of his contemporaries.  Plaintiff was placed on a Coaching and Counseling Plan and, when he failed to adequately address his performance issues, he was placed on a PIP.  After failing to make the necessary improvements to his performance while on the PIP, Plaintiff was terminated.

Plaintiff does not directly address Abbott's argument that he was unqualified.  The Court, however, gleans from the fact section of Plaintiff's memorandum in opposition and from Plaintiff's pretext arguments that Plaintiff does not agree that he was unqualified because his performance problems were minor and because he received pay raises during the years he received poor performance reviews and discipline regarding his performance.  Plaintiff's opinion that his performance problems were minor is not sufficient to raise a genuine issue of fact regarding the qualified prong of his *prima facie* case.  The Sixth Circuit has explained that a plaintiff's contention that his employer "made too big a deal" of his job performance deficiencies was not sufficient to raise a genuine issue of fact regarding the qualified prong of the *prima facie* case.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990).  The appellate court stated that, " '[i]f [the plaintiff] was not doing what his employer wanted him to do, he was not doing his job . . . [the plaintiff] does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors.' "  *Id.* (internal omission in original, citation omitted).  The same is true here; that is, Plaintiff does not raise a genuine issue of material fact by challenging the judgment of his supervisors.

With regard to the pay raises, the fact that Plaintiff received them during the years he received poor performance reviews and was disciplined for his performance does not support a finding that he was meeting his employer's expectations in this case.  The evidence shows that

15

Plaintiff performed well below his employer's expectations and his peers' performances.  The fact that in Abbott's business judgment it was appropriate to reward him for a specific area of good performance regardless of the fact that he performed poorly in most other areas of his job duties does not indicate that Plaintiff was qualified for his job.  *See e.g.*, *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 453 (7th Cir. 1998) (employer awarded pay raises and bonus to employee who was underperforming and those raises did not raise a genuine issue of material fact regarding plaintiff's failure to meet his employer's expectations); *Halsell v.Kimberly-Clark Corp.*, 683 F.2d 285, 291 (8th Cir. 1982) (pay raise two months before employee's termination "did not establish that [the employee] was qualified for his job, and, thus, did not raise an inference of age discrimination").  Consequently, Plaintiff has failed to establish the third prong of his *prima facie* case.

### c.  Conclusion - *Prima Facie* Case

Even when viewing all of the evidence in the light most favorable to Plaintiff and making all reasonable inferences in his favor, Plaintiff has failed to raise a genuine issue of material fact as to whether he was replaced by someone outside of his protected age and/or race categories, as to whether he was treated less favorably than a similarly situated individual outside of his protected classes, and as to whether he was qualified for his position.  Thus, Plaintiff has failed to establish a *prima facie* case of race and/or age discrimination and Abbot is entitled to summary judgment on these claims.

### 2.  Legitimate Nondiscriminatory Reason for Termination and Pretext

Abbott argues that, even if Plaintiff were able to establish a *prima facie* case of age or race discrimination, it is still entitled to summary judgment because Plaintiff cannot show that its

legitimate nondiscriminatory reason for terminating him was a pretext for discrimination. This Court agrees.

Abbot claims that it terminated Plaintiff for poor performance. Poor performance is a legitimate nondiscriminatory reason for termination. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001); *see also Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ("It is important to note that the defendant need not prove a nondiscriminatory reason for not promoting Hartsel, but need merely articulate a valid rationale.") (citation omitted).

With regard to pretext, a plaintiff can show that an employer's proffered nondiscriminatory reason is pretextual by showing, "by a preponderance of the evidence[,] either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis, internal quotation marks, and citation omitted). Plaintiff argues that the deficiencies identified in the PIP did not justify terminating him because he had previously consistently received below average ratings and had not been disciplined. Further, Plaintiff contends that Abbott's decision to terminate him was pretextual because he received pay raises during the years he received below average performance ratings and in the year he received the Coaching and Counseling Plan and the PIP.

The fact that Plaintiff has presented evidence to support his adequate performance in a few areas for which he received a raise or a bonus, does not negate Abbott's evidence that Plaintiff's overall performance was sufficiently deficient to justify the Coaching and Counseling

17

Plan or the PIP or the termination.  *See Bacon v. Honda of Am. Mfg., Inc.*, 192 Fed. Appx. 337, 346 (6th Cir. 2006) (finding no pretext, explaining: "Despite the fact that Manuel has presented evidence to support his adequate performance in a few areas for which he was responsible, this does not negate Honda's evidence that Manuel's overall performance was sufficiently deficient to justify the February 2001 counseling and PIP and Manuel's ultimate termination.").  The evidence shows that Plaintiff performed below Abbott's expectations and below his peers' performances.  The fact that in Abbott's business judgment it was appropriate to reward him for a specific area of good performance regardless of the fact that he performed poorly in other areas of his job duties does not indicate that Abbott terminated Plaintiff because of his race and/or age.

Further, Plaintiff's disagreement with Abbott's decision to continue to employ him and to provide him several opportunities to improve his employment and then to ultimately stop providing him with those opportunities, does not create evidence of pretext in the face of substantial evidence that Abbot had a reasonable basis to be dissatisfied.  Indeed, the Sixth Circuit has repeatedly stated that the "salient issue in a Title VII claim of discrimination is whether the plaintiff was singled out because of [his or] her membership in a protected class and treated less favorably than those outside of that class, not whether [he or] she was treated less favorably than 'someone's general standard of equitable treatment.' "  *Corell v. CSX Transp., Inc.*, 378 Fed. Appx. 496, 505 (6th Cir. 2010) (citing *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir.1988)).  Plaintiff here simply asks this Court to second guess Abbott's employment decisions, not because he offers evidence of Abbott's racial and/or age bias, but because he feels he was treated unfairly.  *Id.* ("Corell asks us to second guess CSX's employment decision, not because she offers admissible evidence that indicates CSX's gender bias, but because she feels

18

that she was treated unfairly.").  However, "[t]ime and again [the Sixth Circuit] ha[s] emphasized that [a court's] role is to prevent unlawful [employment] practices, not to act as a super personnel department that second guesses employers' business judgments."  *Id.* (citing *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 399 (6th Cir. 2009)) (internal citation and quotation marks omitted) (Griffin , J. dissenting).  Plaintiff's proffered evidence does not demonstrate that her termination was committed out of Abbott's desire to discriminate against him based on his race or age.

Plaintiff has failed to raise any genuine issue of material fact as to whether Abbott's legitimate nondiscriminatory reason for terminating him was a pretext, and the real reason was race or age discrimination.  Therefore, Abbott is entitled to summary judgment on Plaintiff's age and race discrimination claims.

## B.  Breach of Contract

Under Ohio law, unless otherwise agreed, either party to an employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law.  *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (Ohio 1985), paragraph one of the syllabus.  Thus, "under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of either," and an employee "is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St.3d 571, 574, 653 N.E.2d 381 (Ohio 1995) (citing *Henkel v. Educational Research Council of Am.*, 45 Ohio St.2d 249, 255, 344 N.E.2d 118, 121-122 (Ohio 1976)).  However, "the terms of discharge may be altered when the conduct of the parties indicates an intent to impose different conditions regarding discharge." *Condon v.*

19

*Body, Vickers & Daniels*, 99 Ohio App. 3d 12, 18, 649 N.E.2d 1259 (Ohio Ct. App. 1994) (citation omitted).  There is no dispute that Plaintiff was an at-will employee.

In the second amended complaint, Plaintiff alleges that Abbott altered his employment relationship by giving Plaintiff performance awards each year his overall performance was rated as Partially Achieved and in the year he was placed on a PIP.  Plaintiff concludes that Abbott's conduct "effectively altered the employment relationship by establishing that Plaintiff Kidd would at least not be terminated for partially achieving in the areas identified in the job performance evaluation and the PIP."  (ECF No. 50 at 8.)  This Court disagrees.

While a plaintiff may, in limited circumstances, show that there was an implied contract which altered the terms of discharge, "the party asserting an implied contract of employment has a heavy burden."  *Daup v. Tower Cellular, Inc.*, 136 Ohio App. 3d 555, 561, 737 N.E.2d 128, 133 (Ohio Ct. App. 2000) (citations omitted).  Mere statements about performance or future career development and opportunities are not enough to create an implied contract.  *Id.  See also Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph three of the syllabus (Ohio 1989) ("Standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship.").  Moreover, a plaintiff seeking to fall within the exception to the at-will doctrine must still prove all of traditional elements of contract formation, including offer, acceptance, mutual assent, and consideration.  *Daup*, 737 N.E.2d at 133 (citations omitted).

Here, Plaintiff offers no evidence of any representations or statements made by Abbot that led him to believe that his employment relationship was altered based on the fact that he had performed poorly in the past without being terminated.  In Plaintiff's deposition testimony, he

20

states that no such statements were made to him.  (ECF No. 49-3 at 31, Pl. Dep. at 114:18-115:1).  He merely testified that he believed it was logical to believe that if he performed his work, he would not be terminated.  Under that logic, there could be no employment at-will doctrine.  Further, the evidence does not support Plaintiff's logic.  That is, all of the statements made by Abbott point to the fact that Plaintiff's employment was at-will.  The employee agreement Plaintiff signed states that his employment was at-will.  *Id.* at 114-116, Pl. Dep. Ex. 3 ("It is understood that either Abbott or [Plaintiff] may terminate the employment relationship at any time.").  Plaintiff's PIP stated that his failure to meet the expectations set forth in the PIP could result in termination.  *Id.* at 170-75, Pl. Dep. Ex. 33.  The fact that Abbott chose to permit Plaintiff several opportunities to improve his performance does not come close to indicating an alteration of his at-will status.  Finally, Plaintiff offers no evidence of the establishment of  the traditional elements of contract formation.

Plaintiff has failed to show any action attributable to Abbott that supports his claim that his employment at-will status was altered or that he and Abbott entered into an employment contract which permitted only specific for-cause termination.  Consequently, Plaintiff has failed to make a showing sufficient to establish the existence of elements of his breach of contract claim upon which he will have the burden of proof at trial.  Thus, Abbott is entitled to summary judgment on Plaintiff's breach of contract claim.

## C.  Promissory Estoppel

To establish a claim of promissory estoppel under Ohio law, the plaintiff must show "a promise, clear and unambiguous in its terms; reliance by the party to whom the promise is made; that the reliance was reasonable and foreseeable; and that the party claiming estoppel was injured

by the reliance." *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App.3d 281, 284, 619 N.E.2d 1035 (Ohio 1992). Plaintiff claims that Abbott should be estopped from denying him a bonus for the year he was terminated based on alleged representations made by Abbot that Plaintiff would receive that bonus. Plaintiff claims that in reliance on the representation, he withdrew significant funds from his 401k on which he incurred tax penalties and fines and lost interest and investment appreciation. Abbott, however, argues that Plaintiff cannot show that he relied upon the promise before he withdrew the funds from his 401k. Plaintiff does not respond to this argument. The Court finds Abbott's argument well taken.

At his deposition, Plaintiff testified that he borrowed against his 401k before he was terminated from Abbott and before he was allegedly told that he would receive his 2008 bonus. (ECF No. 49-3 at 33-34, Pl. Dep. at 122:20-22; 125:23-126:2). Plaintiff also testified that he withdrew money from his IRA, which represented the proceeds of his 401k, only after he had been told that Abbott was not going to pay any bonuses to him. *Id.* at 34-35, Pl. Dep. at 129:7-130:25. Because Plaintiff borrowed against his 401k before the alleged promise was made and withdrew funds after he had been told that we would not be receiving a bonus, he could not have taken these actions in reliance on any representations or statements made by Abbott. Accordingly, no reasonable jury could return a verdict in favor of Plaintiff on his promissory estoppel claim and Abbott is entitled to summary judgment on that claim.

### IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant Abbott Laboratories'

Motion for Summary Judgment.  (ECF No. 48.)  The Clerk is **DIRECTED** to **ENTER**

**JUDGMENT** accordingly.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L.  Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**